**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Frank SIMON and Benjamin Eisenman,**
**doing business as Eastern School,**
**Defendants.**

United States District Court
S. D. New York.

July 11, 1960.

S. Hazard Gillespie, Jr., U. S. Atty., S. D. New York, New York City, for plaintiff; Lawrence P. McGauley, Asst. U. S. Atty., New York City, of counsel.

Garey & Garey, New York City, for defendants; John D. Roeder, Anthony J. Obadal, New York City, of counsel.

METZNER, District Judge.

The defendants move to dismiss the indictment or, in the alternative, particular counts of the indictment on the following grounds:

(1) Dismissal of all counts of the indictment because they do not state a crime against the United States.

(2) Dismissal of all counts of the indictment because the statutes and allegations are indefinite and uncertain and therefore do not inform the defendants of the crimes with which they are charged.

(3) Dismissal of counts 1 through 35 because they are multiplicitous and do not charge a crime against the United States.

(4) Dismissal of counts 36 through 70 for the reasons given in (3) above.

(5) Dismissal of counts 71 through 80 for the reasons given in (3) above.

(6) Dismissal of count 81 because it does not charge a single crime, but rather multiple crimes, and is thus vague and duplicitous in not informing the defendants of the accusation against them.

The defendants conducted a school which gave courses in electronics, mostly to veterans. The first 35 counts charge that the defendants made, caused to be made and procured the presentation to the Veterans Administration of 35 separate certificates, each called a "Monthly Certification of Training" (VA Form VB7–1996b), which were false and fraudulent *concerning a claim for benefits* for education and training allowances. The falsity charged is the alleged understatement in each certificate of absences and tardinesses of the student to which the certificate refers. These alleged falsifications are charged to be violations of 38 U.S.C. § 715 (1952 Edition).[1]

Counts 36 through 70 of the indictment charge that the defendants made and presented to the Veterans Administration the same certificates referred to in the first 35 counts which were false, fictitious and fraudulent *concerning a claim for payment* for education and training allowances in violation of 38 U.S.C. § 979(1) (1952 Edition).

Counts 71 through 80 charge that the defendants made and presented 10 separate certificates, each called an "Enrollment Certification" (VA Form 7–1999). The charge is that the defendants falsely certified that on the day of enrollment of the student listed in each enrollment certificate not more than 85% of the students at the school were having all or part of their tuition paid by the Veterans Administration or the school. These counts charge violations of 38 U.S.C. § 979(1).

Finally, in count 81 it is charged that the defendants conspired with 43 other named persons to violate §§ 715 and 979 and to defraud a United States agency by making, causing to be made, presenting and causing to be presented claims for benefits for education and training allowances, knowing the claims to be false.

█ The defendants' first attack on the indictment is based upon their interpretation of the words "concerning any claim for benefits" contained in § 715. They argue that the monthly certification form does not concern a claim for benefits within the meaning of § 715 and therefore counts 1 through 35 do not allege a crime against the United States.

---

1. Now 38 U.S.C.A. § 3503.

The Veterans Administration pays to each eligible veteran who is pursuing a program of education, and who applies therefor, an education and training allowance. 38 U.S.C. § 941(a) (1952 Edition).[2] No allowance shall be paid to an eligible veteran for any period until the Administrator shall have received from the veteran and from the educational institution a certification as to attendance and enrollment. 38 U.S.C. § 941(c) (1) (B) and (c) (2). Education and training allowances shall be paid within 20 days after receipt by the Administrator of the required certification.

There is no argument with defendants' contention that these payments are gratuities (see Lynch v. United States, 1934, 292 U.S. 571, 54 S.Ct. 840, 78 L. Ed. 1434; Hormel v. United States, D. C.S.D.N.Y.1954, 123 F.Supp. 806) and that a "claim" against the government has been construed to mean "a demand for money or for some transfer of public property." United States v. McNinch, 1958, 356 U.S. 595, 599, 78 S.Ct. 950, 952, 2 L.Ed.2d 1001. However, defendants' misconception lies in the attempt to interpret § 715 as limited solely to a "claim" and therefore not applicable to a gratuity. The fact is that the word "gratuities" could be used as a synonym for benefits in this section so that it could read "concerning any claim for gratuities". If defendants' limited interpretation of this section were to be adopted, this court would have to hold that Congress enacted a meaningless provision when it made § 715 applicable to Subchapter II, Chapter XIV, 38 U.S.C. (§ 980) (1952 Edition). Cf. Karrell v. United States, 9 Cir., 1957, 247 F.2d 706, 708. The statute is specific when it refers to "concerning any claim for benefits", and the question really is whether the monthly certification concerns a claim for a benefit.

As indicated above, this certificate is a necessary condition precedent to the payment of benefits to the veteran. Therefore, as it is a step in the disbursement procedures it must be embraced within the words "concerning any claim for benefits".

In addition, the statute (38 U.S.C. § 941(b) (2)) provides that a veteran shall not receive these benefits for any day of absence in excess of 30 days in a 12-month period. This further buttresses the interpretation that the certification concerns a claim for benefits. Finally, the instructions on the back of the certificate (VA Form VB7–1996b) provide that:

"The education and training allowance cannot be paid for any month until this form completed for that month is received by the VA."

and further provide that:

"The school or training establishment must verify the accuracy of the absence record reported by the veteran. The signature of the responsible official of the school or training establishment constitutes a certification that the veteran's report is correct except as explained in item 11, 'Remarks.'"

■ The defendants' second attack on the indictment is directed to counts 36 through 70 and is based upon their interpretation of the words "concerning any claim for payment" contained in § 979 (1). Arguments similar to those made against counts 1 through 35 are presented. For the reasons stated above these objections must be overruled.

■ We now come to counts 71 through 80 of the indictment, which charge the defendants with violating 38 U.S.C. § 979(1) in that they did make and present to the Veterans Administration false, fictitious and fraudulent certificates "concerning a claim for payment" which certified that on the date of enrollment of the designated students not more than 85% of the students then enrolled in the course were having all or any part of their tuition, etc., paid to or for them by the school or the Veterans Administration.

2. Now 38 U.S.C.A. § 1631(a).

VA Form 7–1999 is known as an "Enrollment Certification" and is filed by the school for each student, giving his name, claim number, type of course being pursued, date of commencement of training, number of hours in attendance, and a certification that not more than 85% of the students now enrolled in the course are having all or any part of their tuition, etc., paid to or for them by the educational institution or the Veterans Administration.

38 U.S.C. § 975 (1952 Edition).[3] provides that each school shall report to the Administrator, on the forms prescribed by him, the enrollment of each eligible veteran enrolled under this subchapter.

38 U.S.C. § 931 (1952 Edition) [4] provides that the Administrator shall not approve the enrollment of any eligible veteran if more than 85% of the students enrolled in the course are having all or any part of their tuition, etc., paid to or for them by the educational institution or the Veterans Administration.

Obviously the "Enrollment Certification" is the basis for the Administrator's approving the enrollment of any veteran in a school and is a necessary step in determining the eligibility of a veteran for payments of tuition, etc., by the Veterans Administration. Consequently, such a certificate concerns a claim for payment under this subchapter of Title 38. If such a certificate is "false, fictitious, or fraudulent", then there has been a violation of Section 979(1).

Finally, it seems clear for the above reasons that the language of §§ 715 and 979(1) is neither vague nor ambiguous and gives defendants adequate warning of the act it proscribes. Cf. Young v. United States, 9 Cir., 1949, 178 F.2d 78.

■ The defendants' next objection to the indictment is that counts 1 through 35, 36 through 70, and 71 through 80 should be dismissed for multiplicity since each set of counts charges but a single course of conduct. Section 715 defines the crime as the filing of a false certificate concerning any claim for benefits. Section 979(1) defines the crime as the presentation of any false certificate concerning any claim for payment. The filing or presentation of each false certificate is a crime in itself. The position of the defendants that the sections condemn a course of conduct and not individual acts of falsification initially commends itself because of the possible extreme harshness of the penalty if a consecutive sentence were meted out for each falsification. Against this consideration, however, is the fact that the Second Circuit has interpreted an analogous statute, 18 U.S.C. § 1001, to make the unit of prosecution each false statement. United States v. Private Brands, Inc., 1957, 250 F.2d 554. Moreover, United States v. Universal C. I. T. Credit Corp., 1952, 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260, relied on by the defendants was distinguished in Private Brands. The fact of this analogy is pointed up by Congress' failure to re-enact the specific penalty provisions of §§ 715 and 979 in the 1958 recodification of veterans' legislation, relying instead on the general provisions, such as § 1001, interpreted in United States v. Private Brands, Inc., supra. See H.R.Rep. No. 1298 (85th Cong.2d Sess.1958). The decision in United States v. Private Brands, Inc. is more than a simple analogy, and is buttressed by Berg v. United States, 9 Cir., 1949, 176 F.2d 122, and cases cited therein, indicating a generally uniform construction of false statement statutes to penalize each individual false statement.

■ The defendants' final objections are directed at count 81, the conspiracy count. They argue that it is bad because it charges more than one conspiracy; or in the alternative that it should be dismissed because it charges a conspiracy to commit a felony and a misdemeanor and therefore charges the commission of a felony and a misdemeanor in a single count. See 18 U.S.C. § 371.

As to the first argument for dismissal of count 81, the short answer is that it

---

3. Now 38 U.S.C.A. § 1665.

4. Now 38 U.S.C.A. § 1623(c).

is premature. This is seen from a reading of the case upon which defendants place their chief reliance, Kotteakos v. United States, 1946, 328 U.S. 750, 66 S. Ct. 1239, 90 L.Ed. 1557. In that case, although the indictment charged one conspiracy, on the trial the government proved eight separate conspiracies. Because of this variance between pleading and proof which the court held to be fatally prejudicial on the facts of the particular case the convictions were reversed. This indictment pleads one conspiracy on its face, and this motion is addressed to the pleading. See United States v. Stromberg, D.C.S.D.N.Y.1957, 22 F.R.D. 513, 519. If there is a variance in proof at the trial from what is charged in the indictment, a motion will then be in order.

The second ground of objection is also, in my view, premature. The crime of conspiracy is the agreement between the parties to violate the law. In Braverman v. United States, 1942, 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23, the court said:

"The allegation in a single count of a conspiracy to commit several crimes is not duplicitous for 'The conspiracy is the crime, and that is one, however diverse its objects.'"

Section 371 of Title 18 defines conspiracy and provides two separate penalties, one if the conspiracy is to commit a felony, and the other if the conspiracy is to commit a misdemeanor. It is true that charging both a felony and a misdemeanor in one count can prejudice the defendants if the jury is not properly instructed. Such instruction is necessary in order for the court to determine what penalty to impose. In Williams v. United States, 5 Cir., 1956, 238 F.2d 215, a defendant was charged in the conspiracy count with agreement to violate statutes, some of which were felonies and one of which was a misdemeanor. The defendant failed to raise any question regarding this count either before trial or by requesting an appropriate charge, or by requesting clarification of the jury's verdict, until after the jury had been discharged. The court said that the defendant might have objected to the faulty indictment or requested a charge to the jury calling for a special verdict or for a verdict indicating the degree of the defense under Rule 31(c) of the Federal Rules of Criminal Procedure, 18 U.S.C. I am of the opinion that the count as alleged here is good as against the motion to dismiss and that the proper remedy for the defendants is in the latter two suggestions contained in the Williams case. Cf. United States v. Ogull, D.C.S. D.N.Y1957, 149 F.Supp. 272.

For the above reasons the motions of the defendants are denied in all respects.

So ordered.